[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-15949
Non-Argument Calendar
_____

D.C. Docket No. 2:10-cr-14069-JEM-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JEFF JUNIOR HOLLAND,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(January 8, 2013)

Before CARNES, HULL and WILSON, Circuit Judges.

PER CURIAM:

Jeffrey Junior Holland appeals his convictions and sentences for the following offenses: (1) conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a) (Count 1); (2) attempt to commit Hobbs Act robbery, in violation of 18 U.S.C. §§ 1951(a) and 2 (Count 2); (3) conspiracy to possess with intent to distribute five kilograms or more of cocaine, in violation of  21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii), and 846 (Count 3); (4) attempt to possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii), and 18 U.S.C. § 2 (Count 4); (5) conspiracy to carry and possess a firearm in furtherance of a drug trafficking crime or crime of violence, in violation of  18 U.S.C. §§ 924(c)(1)(A) and (o) (Count 5); (6) carrying and possessing a firearm in furtherance of a drug trafficking crime or crime of violence, in violation of 18 U.S.C. §§ 924(c)(1) and (2) (Count 6); and (7) possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) (Count 7).

First, Holland argues that the district court erred in denying his Federal Rules of Civil Procedure Rule 29 motion for judgment of acquittal for insufficient evidence of an interstate nexus to trigger the Hobbs Act, and insufficient evidence that he possessed and intended to use a firearm.  Second, he argues that the district court erred by giving basic instructions on conspiracy and attempt in addition to

2

instructions on the substantive elements of each charge.  Third, he argues that the district court abused its discretion during jury selection by limiting voir dire questions.  Lastly, Holland argues that his sentence was procedurally and substantively unreasonable because the government engaged in sentencing-factor manipulation and because there was an unreasonable disparity between Holland's sentence and the sentences his co-defendants received.  After a thorough review of the record and briefs, we affirm.

## I.  BACKGROUND

Holland, along with James George and Darius Gatlin, entered into an agreement with undercover special agent Patrick Collins of the Bureau of Alcohol, Tobacco and Firearms (ATF) to rob a shipment of cocaine from a stash house in Broward County, Florida.  Holland believed that there were armed guards at the stash house and that each shipment to the house contained at least 15 kilograms of cocaine.  On July 23, 2010, Holland told Collins that he would bring an AK47 firearm to the robbery, assuring Collins that he had experience with that type of robbery.  On August 5, 2010, Holland, George and Gatlin met with Collins to tell Collins about their plan for the robbery.  Gatlin stated, "[W]e going to have to tie them boys up," and Holland agreed.  Holland stated, "[T]his ain't the first time anyway," and added that he had "beat a murder and a home invasion" in 2008.

3

When Collins asked him if he had ever "done a house," Holland said, "[E]verything, man, that's what we do."  Holland also talked about obtaining "a little deuce deuce," referring to a .22-caliber firearm.  Holland, George, and Gatlin discussed obtaining various types of firearms, including a .35-caliber pistol and a pump action shotgun.  Holland indicated that these weapons were necessary "just in case we got to squeeze."  Holland also stated that he knew "big peoples in Miami and Palm Beach" who could help move the cocaine they would get from the robbery.

On August 17, 2010, Collins met with Holland, George, and Gatlin at a park in Tamarac, Florida, and the three men got into Collins's car and drove to the "undercover warehouse."  Collins asked them to put their guns in the trunk of the car, but George indicated that they had left a gun back at the park "where no one can touch it."  When they arrived at the warehouse, Collins gave Gatlin and Holland access to a rental car they were to use for the robbery.  Collins remained at the warehouse with George, while Holland and Gatlin drove back to the park.  When Holland and Gatlin returned to the warehouse, Collins gave a signal to the arrest team.  Among the items recovered at the warehouse were a .40-caliber High Point pistol and eight rounds of .40-caliber ammunition.  After the gun was impounded, ATF performed a "gun trace" revealing that the gun originally was

4

purchased by a man named David Deshomme, an acquaintance of Holland's. Deshomme testified that he owned a .40-caliber pistol, and that Holland had asked to purchase it from him, but he had refused. Deshomme discovered that the gun was missing when law enforcement officials inquired as to its whereabouts.

A federal grand jury returned an indictment charging Holland, George and Gatlin with Counts 1 through 6. In addition, Holland was individually charged with Count 7. George and Gatlin entered into plea agreements with the government, pleading guilty to counts charged in a superseding information that reduced the drug quantity. Holland proceeded to trial.

Prior to trial, Holland's counsel submitted a list of proposed voir dire questions containing 14 numbered topics. Relevant to this appeal, Holland's submission included questions regarding his status as a convicted felon, the presumption of innocence, and the burden of proof. The court did not explicitly adopt any of Holland's proposed voir dire questions. Rather, at the beginning of jury selection, the court informed the jury of the charges against Holland, and asked whether any of the potential jurors had any reason to doubt their ability to be impartial. The court explained the presumption of innocence and the government's burden of proof, and asked the prospective jurors whether they accepted those principles. The court excused several jurors for cause, and allowed each side to

5

exercise peremptory challenges.  After the jury was sworn, the court gave preliminary instructions to the jury.

At trial the government and Holland entered into a stipulation regarding Holland's prior felony conviction.  The stipulation was read to the jury, and stated that, prior to August 17, 2010, Holland had been convicted of a felony offense.  At the conclusion of the testimony, Holland made a motion for judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure.  The court denied Holland's motion.

Before closing arguments, the court discussed jury instructions with Holland's counsel and provided counsel with an opportunity to object.  The jury instructions included specific instructions on conspiracy and attempt, which were to be given before the instructions on the elements of each substantive offense. Holland objected to providing the jury with separate instructions on conspiracy and attempt, arguing that the instructions were duplicative because the language in the substantive counts already included the elements of each crime, and that the jury was likely to be confused about what the government was required to prove.  The district court disagreed, and stated that it would give the instruction over defense counsel's objection.  The jury returned guilty verdicts on all counts.

6

Holland moved for a new trial, asserting that the court's general conspiracy and attempt instructions violated his rights under the Fifth and Sixth Amendments, because they omitted essential elements of the substantive offenses. Additionally, Holland noted that, if the jury instructions were defective, the court would also be required to grant a new trial as to Count 6, because a conviction on that count required the jury to find that Holland committed at least one of the other crimes charged in the indictment. The district court denied Holland's motion for a new trial.

The probation officer prepared a Presentence Investigation Report (PSI), stating  that Holland's combined adjusted offense level was 34, the level applicable to drug offenses involving at least 15 but less than 50 kilograms of cocaine, pursuant to USSG §2D1.1(a)(5). With no further adjustments, Holland's total offense level was 34, and his criminal history category was IV. His advisory Guideline range therefore, was 210 to 262 months' imprisonment. The statutorily mandated minimum term of imprisonment for Count 6 was 60 months, consecutive to any other term of imprisonment.

Holland filed a motion for a downward departure, arguing that because the government both "invented the amount of drugs which it knew would directly impact the Guideline calculations," and "created the fiction of two armed guards" in order to induce the use of a firearm, it had engaged in sentencing-factor manipulation. At sentencing, Holland reiterated the arguments in his motion, and further emphasized his lack of education, impoverished background, lack of parental guidance, and other hardships in support of a downward departure. He also noted that the court had varied downward in sentencing George and Gatlin. Noting that the minimum mandatory sentence for Holland's convictions was 15 years, with 10 years being the minimum mandatory sentence for the drug offense involving more than 15 kilograms and 5 years for the § 924(c) charge, Holland asked that the court impose a sentence of 15 years' incarceration, or 180 months.

The court stated in imposing Holland's sentence that it had considered "the statements of all the parties, the presentence report which contains the advisory Guidelines[,] and the statutory factors." The court further found that a "sentence at the low end of the advisory Guideline range is sufficiently punitive to deter the defendant from further criminal conduct," and stated that it would impose a sentence "within and at the bottom of the advisory Guideline range." The court imposed a total sentence of 270 months' imprisonment, which included the 60

8

months' mandatory consecutive sentence for Count 6.  Based on their guilty pleas to the two counts of the superseding indictment, George received a sentence of 120 months' imprisonment and Gatlin received a sentence of 132 months' imprisonment.  Holland now appeals.

## I.    Analysis

### *a. Rule 29 Motion*

Holland argues that there was insufficient evidence of an interstate nexus to support his conviction for violating the Hobbs Act, because the conspiracy's objective was to steal drugs before they left Florida and crossed state lines. Second, Holland argues that there was insufficient evidence to support the element of possessing a firearm, in Counts 5, 6, and 7, because "there were three co-defendants who were . . . equally likely to have handled the firearm."  Lastly, Holland contends that because there was no evidence of intent to use a firearm, acquittal on Counts 5 and 6 was required.

We review *de novo* the denial of a Rule 29 motion for judgment of acquittal based on the sufficiency of the evidence, "viewing the evidence in the light most favorable to the government and drawing all reasonable inferences and credibility choices in favor of the jury's verdict."  *United States v. Tampas*, 493 F.3d 1291, 1297–98 (11th Cir. 2007) (internal quotation marks omitted).  Where, as in this

9

case, the jury convicted the defendant, we will affirm the conviction "if a reasonable juror could have concluded that the evidence established [the defendant's] guilt beyond a reasonable doubt." *Id.* at 1298.

"The Hobbs Act prohibits robbery or extortion, and attempts or conspiracies to commit robbery or extortion, that in any way or degree obstruct, delay, or affect commerce or the movement of any article or commodity in commerce." *United States v. Diaz*, 248 F.3d 1065, 1084 (11th Cir. 2001) (alteration in original) (internal quotation marks omitted).  To establish a Hobbs Act conspiracy, "the government must prove that: (1) two or more persons agreed to commit a robbery or extortion encompassed within the Hobbs Act; (2) the defendant knew of the conspiratorial goal; and (3) the defendant voluntarily participated in helping to accomplish the goal." *Id.* at 1084.  When a defendant is charged with conspiracy to violate the Hobbs Act, "the interstate nexus may be demonstrated by evidence of potential impact on interstate commerce or by evidence of actual, de minimis impact." *United States v. Le*, 256 F.3d 1229, 1232 (11th Cir. 2001) (emphasis omitted).  "[P]ossession and sale of illegal drugs impacts upon interstate commerce." *United States v. Bernard*, 47 F.3d 1101, 1103 (11th Cir. 1995) (per curiam).  Finally, a conspiracy to obstruct drug trafficking establishes a sufficient interstate nexus to satisfy the jurisdictional requirement of the Hobbs Act, even

10

where the intended victims and drugs are fictitious. *See United States v. Taylor*, 480 F.3d 1025, 1027 (11th Cir. 2007).

Next, 18 U.S.C. § 922(g)(1) makes it a crime for a convicted felon to possess any firearm that in any manner affects interstate commerce. The law recognizes several kinds of possession, including actual possession, constructive possession, and joint possession. *United States v. Wright*, 392 F.3d 1269, 1273 (11th Cir. 2004); *see also United States v. Crawford*, 906 F.2d 1531, 1536 (11th Cir. 1990) (recognizing that "there may be joint possession of a firearm"). "Constructive possession exists when the defendant exercises ownership, dominion, or control over the item or has the power and intent to exercise dominion or control." *United States v. Greer*, 440 F.3d 1267, 1271 (11th Cir. 2006). Further, 18 U.S.C. § 924(c) makes it illegal for a person to possess a firearm "in furtherance" of a crime of violence or drug trafficking crime. The "in furtherance of" prong of the statute requires the government to prove that the firearm "helped, furthered, promoted, or advanced" the drug trafficking or crime of violence. *See United States v. Timmons*, 283 F.3d 1246, 1252 (11th Cir. 2002) (addressing a firearm used in furtherance of a drug trafficking crime). Finally, factors that may be considered when determining if possession was "in furtherance" of the crime include the following: the type of activity that was being

11

conducted, the accessibility of the firearm, the type of weapon, whether the weapon was stolen, whether the possession of the firearm was legal, whether the gun was loaded, the gun's proximity to drugs or drug profits, and the time and circumstances under which the gun was found. *United States v. Suarez*, 313 F.3d 1287, 1292 (11th Cir. 2002).

Here, sufficient evidence supports Holland's convictions for conspiracy and attempt to commit a Hobbs Act robbery. This case involved the planned robbery of a cocaine stash house, inherently satisfying the requirement of an interstate nexus. *See Bernard*, 47 F.3d at 1103 (holding that the sale and possession of illegal drugs effects interstate commerce). In *Taylor*, when called upon to decide whether the jurisdictional requirement of the Hobbs Act was satisfied in a reverse-sting case based on a conspiracy to rob fictitious drug dealers, we began with the premise that "[i]f the cocaine in this case actually existed, a sufficient interstate nexus would exist to satisfy the jurisdictional requirement of the Hobbs Act." 480 F.3d at 1027.

In this case, Holland, George and Gatlin were expressly told that Collins was a drug courier for a drug trafficking operation between Puerto Rico and Florida. Holland's contention that the cocaine would have "lost its interstate character" once it arrived at its destination in Florida is based upon dicta in a case that

12

involved a stolen shipment of electronics goods, and is inapposite in the context of narcotics trafficking. *United States v. Petit*, 841 F.2d 1546, 1551–52 (11th Cir. 1988).

The theory of constructive possession supports Holland's firearms convictions. Holland told Collins that he would bring an AK47, talked about finding a .22-caliber firearm, and discussed obtaining other types of weapons "just in case we got to squeeze." Further, on the date of the attempted robbery, Holland confirmed a previous statement made by George that they had left the gun back at the park where they met Collins. Sufficient evidence supports this statement. The day of the robbery, an aerial surveillance officer observed Holland and Gatlin driving back to the park, while Collins waited in the warehouse with George. Upon returning to the warehouse, the passenger in the car went to the bushes where the .40-caliber pistol was later found. Finally, Deshomme testified that the .40-caliber pistol disappeared after he refused to sell the gun to Holland. Based on these facts, the jury reasonably inferred that Holland constructively possessed the .40-caliber pistol found in the bush near the warehouse.

Similarly, applying the *Suarez* factors, sufficient evidence supports the jury's finding that Holland possessed the firearm in furtherance of a crime of violence or drug trafficking crime. 313 F.3d at 1292. The evidence established

13

that the gun was loaded, had been stolen from Deshomme who stated that Holland

had asked to buy the gun, and was hidden at a park, and ultimately placed in a bush

just outside the warehouse where the conspirators met before they attempted to rob

the stash house.  Additionally, the conspirators discussed their plan for overcoming

the armed guards at the stash house, and referred to various types of firearms, with

Holland specifically mentioning the possibility of having to "squeeze" the trigger.

Thus, the jury reasonably inferred that Holland intended to use the firearm in

furtherance of the robbery.

### b.  Jury Instructions

Holland argues that the district court's instructions on conspiracy and

attempt were deficient because they did not include the necessary elements for

conviction on the substantive charges, and appeared to the jury as alternative

instructions for finding Holland guilty.  We review jury instructions *de novo* to

determine whether they misstate the law or mislead the jury to the prejudice of the

objecting party.  *United States v. Gomez*, 580 F.3d 1229, 1233 (11th Cir. 2009).

Generally, district courts "have broad discretion in formulating jury instructions

provided that the charge as a whole accurately reflects the law and the facts."

*United States v. Moore*, 253 F.3d 607, 609 (11th Cir. 2001) (internal quotation

marks omitted).  On appeal, we consider "whether the jury charges, considered as a

14

whole, sufficiently instructed the jury so that the jurors understood the issues and were not misled." *United States v. Starke*, 62 F.3d 1374, 1380 (11th Cir. 1995) (internal quotation marks omitted).  The jury is presumed to follow the court's instructions.  *See United States v. Brown*, 983 F.2d 201, 202 (11th Cir. 1993).

Here, the district court first provided general instructions regarding burden of proof, presumed innocence, types of evidence, and a limiting instruction regarding evidence of other acts.  Then the court read out the seven counts charged against Holland and stated:

> I will explain the law governing these offenses in a moment, but please note that the defendant is not charged in Counts 1, 2, 3, 4, and 5 with committing a substantive offense.  He is charged with conspiring or attempting to commit those offenses.

The court then gave basic instructions regarding conspiracy and attempt.  The court next read the instructions pertinent to each count, specifying the elements and definitions for each crime, and instructed the jury that they could reach a guilty verdict "only if all of the following facts are proved beyond a reasonable doubt." The jury was also given the circumstances under which a defendant may be found guilty of a crime committed by a co-conspirator to advance the conspiracy towards its goals.  Finally, the court instructed the jury on general definitions including possession, knowingly and willfully, and the proper use of exhibits and tape recordings.

15

Holland has failed to demonstrate that the court's instructions on conspiracy and attempt misstated the law or misled the jury.  Holland has offered nothing to rebut the presumption that the jurors followed the court's instructions that all of the elements of each count had to be proved beyond a reasonable doubt.  He has cited no case that supports his contention that giving separate instructions on attempt and conspiracy constitutes structural error, and independent research has revealed no such case.

### c.  Voir Dire

Holland argues that the district court abused its discretion during jury selection.  We review a district court's conduct of voir dire for abuse of discretion.  *United States v. Vera*, 701 F.2d 1349, 1355 (11th Cir. 1983).  The district court's discretion includes whether to submit a party's proposed questions to the venire.  *United States v. Tegzes*, 715 F.2d 505, 507 (11th Cir. 1983).  "The purpose of voir dire is to enable the defendant to evaluate the prospective jurors and select a fair and impartial jury."  *Vera*, 701 F.2d at 1355.  The proper inquiry is "whether the district judge's overall examination, coupled with his charge to the jury, affords a party the protection sought."  *Tegzes*, 715 F.2d at 507 (internal quotation marks omitted).  A district court does not abuse its discretion unless it fails to reasonably assure that prejudice would be discovered if present.  *Id.*

16

In this case, the district court acted within its discretion in conducting voir dire. While the court did not explicitly inquire as to bias toward convicted felons, the court advised the prospective jurors of the charges that Holland faced, and asked if they could be impartial. It explained the presumption of evidence and the burden of proof, and asked the prospective jurors whether they accepted those principles. After the jury was sworn, the court gave preliminary instructions to the jury, including instructions on the presumption of evidence and the government's burden of proof. At the close of evidence, the court again addressed these topics in specific jury instructions, and also gave a limiting instruction regarding the use of other acts. The voir dire process in this case provided reasonable assurance that any existing prejudices held by potential jurors were discovered, and, together with the court's instructions, adequately protected Holland's right to an impartial jury.

### d. Holland's Sentence

Holland argues that the district court failed to recognize that, because the government controlled both the amount of drugs in this case and the facts that induced the defendants to use a firearm, the government engaged in sentencing-factor manipulation. Holland also claims that his sentence was unreasonably disparate from those of his co-defendants, who both received downward variances.

17

We review the reasonableness of a sentence under a deferential abuse of discretion standard. *Gall v. United States*, 552 U.S. 38, 41, 128 S. Ct. 586, 591 (2007). "A district court abuses its discretion when it (1) fails to afford consideration to relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors." *United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010) (en banc) (internal quotation marks omitted). "We may set aside a sentence only if we determine, after giving a full measure of deference to the sentencing judge, that the sentence imposed truly is unreasonable." *Id.* at 1191. In reviewing the reasonableness of a sentence, we "must first ensure that the district court committed no significant procedural error." *Gall*, 552 U.S. at 51, 128 S. Ct. at 597. Once we determine that a sentence is procedurally sound, we examine whether the sentence is substantively reasonable in light of the totality of the circumstances. *Id.* The party challenging the sentence bears the burden of establishing unreasonableness. *United States v. Tome*, 611 F.3d 1371, 1378 (11th Cir. 2010).

This court has never applied the defense of sentencing-factor manipulation to a defendant's sentence. *United States v. Docampo*, 573 F.3d 1091, 1097–98 (11th Cir. 2009). If sentencing-factor manipulation were recognized, however, the

18

district court would filter the manipulation out of the sentencing calculation, and thus, any mandatory minimums that only applied because of the manipulation would no longer be applicable at sentencing. *United States v. Ciszkowski*, 492 F.3d 1264, 1270 (11th Cir. 2007). The standard for sentencing-factor manipulation is high. The government must engage in extraordinary misconduct for the standard to be satisfied. *Id.* at 1271. "The fact that the government's fictitious reverse sting operation involved a large quantity of drugs does not amount to the type of manipulative governmental conduct warranting a downward departure in sentencing." *United States v. Sanchez*, 138 F.3d 1410, 1414 (11th Cir. 1998).

Here, Holland's argument that the government engaged in sentencing-factor manipulation by inventing the amount of cocaine is foreclosed by this court's holding in *Sanchez*. *Id.* Moreover, Collins's creation of an armed guard scenario does not rise to the level of extraordinary misconduct necessary to show sentencing-factor manipulation. Holland's argument that he was not willing and predisposed to commit the crime proposed by Collins is simply not compatible with the facts of this case, including Holland discussing the necessity of using a firearm, stating that he would bring an AK47 firearm to the robbery, and bragging that he had "beat a murder and a home invasion."

19

With regard to Holland's sentencing disparity claim, the district court is required to "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). However, a sentencing disparity is not "unwarranted" if the individuals being compared are not similarly situated. *See United States v. Spoerke*, 568 F.3d 1236, 1252 (11th Cir. 2009). Holland has not shown that there was an unreasonable sentencing disparity as compared to George and Gatlin, because they were not similarly situated for the purposes of 18 U.S.C. § 3553(a)(6). Holland and his co-defendants, who pleaded guilty, were sentenced based on different charged conduct and their sentences do not reflect an unwarranted disparity. *Spoerke*, 568 F.3d at 1252.

Finally, Holland's argument that the district court treated the sentencing Guidelines as presumptively reasonable was raised for the first time in his reply brief, and therefore we need not address it. *See United States v. Oakley*, 744 F.2d 1553, 1556 (11th Cir. 1984) (per curiam) (stating that arguments raised for the first time in a reply brief are not properly before the reviewing court). Nevertheless, there is nothing in the sentencing transcript that suggests that the court treated the Guidelines as presumptively reasonable.

20

In sum, Holland has not shown that his sentence was unreasonable based on sentencing-factor manipulation, or that there was an unreasonable sentencing disparity.

Upon review of the record and consideration of the parties' briefs, we affirm.

**AFFIRMED.**